UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

RODGER WILLIAMS
a/k/a WILLOW WILLIAMS,                                              Plaintiff,

v.                                          Civil Action No. 3:20-cv-P369-DJH

WARDEN FERGUSON *et al*.,                                          Defendants.

\* \* \* \* \*

## <u>MEMORANDUM OPINION AND ORDER</u>

This is *pro se* 42 U.S.C. § 1983 prisoner civil-rights action.  This matter is before the
Court for screening pursuant to 28 U.S.C. § 1915A.  For the reasons set forth below, this action
will be dismissed in part and allowed to continue in part.

### I. SUMMARY OF COMPLAINT

In the complaint, Plaintiff indicates that she is a convicted prisoner, who was previously
incarcerated at Roederer Correctional Complex (RCC), but is now incarcerated at Northpoint
Training Center (NTC).  Plaintiff names the following as Defendants in this action: RCC Warden
Ferguson; Nurse Practitioner Betsy; Dr. Meeks; and the president of Wellpath.[1]  She sues
Defendants in their official capacities only.  Plaintiff claims that during her incarceration at RCC
these Defendants violated her rights under the Eighth Amendment and the Americans with
Disabilities Act (ADA).

---

[1] In the complaint, Plaintiff also made allegations against four Defendants based upon her incarceration at NTC –
NTC Warden Brad Adams, Dr. Clifford, Jann Eddington, and Allyson Ranwater.  Because the NTC is located in the
Eastern District of Kentucky, the Court entered an order which severed from this action Plaintiff's claims against
these Defendants, as well as her claims against Defendants Dr. Meeks and the President of Wellpath which were
based upon her incarceration at NTC, and transferred these claims to the United States District Court for the Eastern
District of Kentucky pursuant to 28 U.S.C. § 1406(a).  (Docket No. 8).  The Court also transferred Plaintiff's motion
for a preliminary injunction (DN 5) to that court since it was related solely to Plaintiff's incarceration at NTC.  *Id*.

Plaintiff specifically alleges that RCC Warden Ferguson caused "Plaintiff as a transgender female diagnosed with gender identity dysphoria (G.I.D.) [to suffer] tremendously in an hostile environment which forbade and denied the plaintiff her hormone therapy and/or medication which she the Plaintiff has taken for over 20 years." Plaintiff states that "by being denied her medication in appropriate doses if at all, from the moment she was in custody of the [RCC] (6/28/19) has suffered mentally & physically. Her body was reverting to that of a male for the first time in years." Plaintiff continues, "[I] was experiencing chest pains and not being treated, validated, or listened to. This continued for approximately two months (6/28/19 to 8/22/19)."

Plaintiff alleges that RCC Nurse Betsy "ordered the Plaintiff's Premarin approximately a week after the Plaintiff was in custody of the RCC []. The Plaintiff never received a full days dosage of her medication despite arriving at [RCC] with approximately a months worth of her medications." Plaintiff then writes: "The Plaintiff constantly questioned, then demanded, verbally, in writing, in grievances . . . why she was not receiving her medication." Plaintiff states that Defendant Betsy informed her that RCC "destroyed the medication she arrived with (Premarin) and that she had to order Plaintiff new medications." Plaintiff states that this resulted in her not receiving her medication for two months.

With regard to Dr. Meeks, Plaintiff alleges that she met with him for approximately one-half hour at RCC and that, during the meeting, they discussed Plaintiff's medical and mental health history. Plaintiff states that she understood that Dr. Meeks was going to order her a prescription for Premarin "as well as maintaining her same dosage of the drug that she had been taking for 10+ years." Plaintiff, however, states that she did not receive these medications and that she believes Dr. Meeks intentionally discontinued her prescription for Premarin. She alleges

that this caused her breasts to become misshapen and to diminish which in turn caused her chest pain and severe distress.

Plaintiff alleges that the President of Wellpath violated her rights by "creating policies that discourages, and denies, the plaintiff medications that the plaintiff has been taking for decades under the care of a board certified licensed doctor." She continues, "Wellpath's policies and procedures has encouraged its staff to use any technicality, policy and/or law to not treat or provide transgender prisoners, like the plaintiff her inalienable and lawful right to mental health treatment, medications, and resources that the law says they must provide." Plaintiff states that these policies have caused her to suffer severe mental stress, physical chest pains, malformed breasts, excess skin, and painful flashbacks.

As relief, Plaintiff seeks damages and injunctive relief in the form of "specific requests regarding plaintiff's custody."

## II. LEGAL STANDARD

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the complaint, or any portion of it, if the court determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* § 1915A(b)(1), (2); *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).

In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)).  "But the district court need not accept a 'bare assertion of legal conclusions.'" *Tackett*, 561 F.3d at 488 (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

Although this Court recognizes that *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), "[o]ur duty to be 'less stringent' with pro se complaints does not require us to conjure up unpled allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).  And this Court is not required to create a claim for Plaintiff.  *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975).  To command otherwise would require the Court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

# III. ANALYSIS

## A.  Constitutional Claims

"Section 1983 creates no substantive rights, but merely provides remedies for deprivations of rights established elsewhere." *Flint ex rel. Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001).  Two elements are required to state a claim under § 1983. *Gomez v. Toledo*, 446 U.S. 635 (1980).  "[A] plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "Absent either element, a section 1983 claim will not lie." *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

The Court construes the complaint as bringing § 1983 claims against all Defendants under the Eighth Amendment for deliberate indifference to a serious medical need.

### 1.  Defendants Warden Ferguson, Nurse Betsy, and Dr. Meeks

As indicated above, Plaintiff sues these Defendants in their official capacities.  "Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*,  473 U.S. 159, 165 (1985).  In the complaint, Plaintiff indicates that they work for RCC, which means they are state officials.[2] State officials sued in their official capacities for damages are absolutely immune from § 1983 liability under the Eleventh Amendment.[3]  *Id*. at 169 ("This Eleventh Amendment bar remains in effect when State officials are sued for damages in their official capacity.").  In

---

[2] In the event that Defendant Nurse Betsy and Dr. Meek are not state officials, but instead work for Wellpath, Plaintiff's official-capacity claims against them would be still dismissed as redundant to Plaintiff's continuing claim against Wellpath.
[3] The Eleventh Amendment provides that "[T]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.

addition, when a state official is sued in his official capacity for monetary damages, he is not a "person" subject to suit within the meaning of § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Accordingly, Plaintiff's official-capacity claims against Defendants Ferguson, Nurse Betsy, and Meeks will be dismissed for failure to state a claim upon which relief may be granted and for seeking monetary damages from Defendants who are immune from such relief.

Moreover, to the extent that Plaintiff requests injunctive relief in the form of "specific requests regarding plaintiff's custody," her request is moot because she is no longer in custody at RCC. *See, e.g.*, *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (concluding that inmate's claims for declaratory and injunctive relief were rendered moot upon inmate's transfer from the prison about which he complained); *Abdur-Rahman v. Michigan Dep't of Corr.*, 65 F.3d 489, 491 (6th Cir. 1995) (finding inmate's request for injunctive relief mooted upon transfer from relevant prison); *Lavado v. Keohane*, 992 F.2d 601 (6th Cir. 1993) (same).

The Court will, however, allow Plaintiff to file an amended complaint in which she sues these Defendants in their individual capacities. *See LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013) ("[U]nder Rule 15(a) a district court can allow a plaintiff to amend his complaint even when the complaint is subject to dismissal under the PLRA [Prison Litigation Reform Act].").

## 2. Wellpath and the President of Wellpath

Plaintiff's official-capacity claim against the president of Wellpath is actually deemed a claim against Wellpath itself. *See, e.g.*, *Smith v. Davis*, No. 5:17-CV-P187-GNS, 2018 U.S. Dist. LEXIS 41882, at *16 (W.D. Ky. Mar. 14, 2018) (finding official-capacity claim against a Correct Care Solutions (CCS) employee to be against CCS itself); *Prather v. Corr. Care Sol.*,

No. 3:16-CV-P60-JHM, 2016 U.S. Dist. LEXIS 65363, at *12 (W.D. Ky. May 18, 2016) (same). Based upon Plaintiff's allegations, the Court will allow an Eighth Amendment claim to proceed against Wellpath.  In allowing this claim to proceed, the Court passes no judgment on its merit or upon the ultimate outcome of this action.

### B.  ADA

The Court next turns to Plaintiff's ADA claim.  Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.  *See generally*, *Mingus v. Butler*, 591 F.3d 474, 481-84 (6th Cir. 2010) (discussing Title II of the ADA in the context of prisoner litigation).[4]  Prisoners, however, cannot bring claims under the ADA for medical treatment decisions.  *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) (concluding that the ADA would not be violated by a prison's failure to address the medical needs of its disabled prisoners and that the statute "does not create a remedy for medical malpractice"); *Burger v. Bloomberg*, 418 F.3d 882, 883 (8th Cir. 2005) (holding that a [Rehabilitation Act] RA and/or an ADA claim cannot be based on medical treatment decisions); *Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1144 (10th Cir. 2005) (inmate's claims under RA and ADA were properly dismissed for

---

[4] Among the courts that have discussed the issue, there is significant disagreement about whether gender dysphoria falls into the ADA's categorical exclusions.  *See Parker v. Strawser Constr., Inc.*, 307 F. Supp. 3d 744, 753-54 (S.D. Ohio 2018) (gender dysphoria not resulting from physical impairment is within the ADA's exclusionary language); *Doe v. Mass. Dep't of Corr.*, No. CV 17-12255-RGS, 2018 U.S. Dist. LEXIS 99925, at *16-18 (D. Mass. June 14, 2018) (drawing a distinction between gender identity disorder and gender dysphoria and suggesting that there may be a physical etiology underlying gender dysphoria sufficient to take it out of "not resulting from physical impairments" category); *Michaels v. Akal Sec., Inc*., No. 09-CV-01300-ZLW-CBS, 2010 U.S. Dist. LEXIS 62954, at *17 (D. Colo. June 24, 2010) (gender dysphoria is a gender identity disorder and therefore exempted from the Rehabilitation Act (RA)); *Blatt v. Cabela's Retail, Inc.*, No. 5:14-CV-04822, 2017 U.S. Dist. LEXIS 75665, at *5-9 (E.D. Pa. May 18, 2017) (gender dysphoria resulting in substantial limits on major life activities falls outside the ADA's exclusionary language).

failure to state a claim as they were based on medical treatment decisions); *Bonds v. S. Health Partners, Inc.*, No. 2:15-CV-209-WOB, 2016 U.S. Dist. LEXIS , at *17-18 (E.D. Ky. Apr. 6, 2016) (dismissing ADA claim brought to challenge medical treatment received by prisoner); *VanDaalen v. Travis*, No. CV 12-642-PHX-RCB (ECV), 2012 U.S. Dist. LEXIS 111066, at *13 (D. Ariz. Aug. 8, 2012) ("Plaintiff appears to be raising claims under the ADA and RA regarding his medical care. . . .  He cannot do so."); *Hardy v. Diaz*, No. 9:08-CV-1352 (GLS/ATB), 2010 U.S. Dist. LEXIS 39295, at *31 (N.D.N.Y. Mar. 30, 2010) ("Plaintiff in this case is only challenging the medical treatment of his underlying medical condition.  Therefore, he cannot proceed under either the ADA or the RA.").

Plaintiff alleges that Defendants failed to ensure that she was properly treated for her medical condition(s)/disability, and not that they excluded her from an RCC program or service because of her alleged disability.  Therefore, she fails to state a claim under the ADA upon which relief may be granted.  *See, e.g.*, *London v. Evans*, No. 19-559 (MN), 2019 U.S. Dist. LEXIS 191662, at *14 (D.C. Del. Nov. 5, 2019) (stating that although the plaintiff alleged she had a disability (*i.e.*, gender identity disorder), her ADA claim had to be dismissed because she did not allege that she was excluded from a prison program or service because of her disability).

## IV.  CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Plaintiff's official-capacity claims against Defendants Warden Ferguson, Nurse Betsy, and Dr. Meeks, including her claims for injunctive relief, are **DISMISSED** pursuant to 28 U.S.C. § 1915A for failure to state a claim upon which relief may be granted and for seeking damages from Defendants who are immune from such relief.

**IT IS FURTHER ORDERED** that Plaintiff's ADA claim is **DISMISSED** pursuant to 28 U.S.C. § 1915A for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that within **<u>30 days</u>** from the entry date of this Memorandum Opinion and Order, **Plaintiff may file an amended complaint** in which she sues Defendants Ferguson, Nurse Betsy, and/or Dr. Meeks in their individual capacities.

The Court will conduct an initial review of the amended complaint pursuant to 28 U.S.C. § 1915A.  **Should Plaintiff fail to file an amended complaint within the allotted amount of time, the Court will enter a Service and Scheduling Order to govern the development of the claim it has allowed to proceed against Wellpath.**

The **Clerk of Court** is **DIRECTED** to terminate the president of Wellpath as a party to this action and to add Wellpath as a Defendant in the docket sheet.

The **Clerk of Court** is further **DIRECTED** to place this case number and word "Amended" on the second page of a § 1983 complaint form and send it to Plaintiff for her use.

Date:   June 29, 2020

**David J. Hale, Judge**
**United States District Court**

cc:  Plaintiff, *pro se*
     Defendants
     General Counsel, Justice & Public Safety Cabinet, Office of Legal Counsel
4415.011