UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE
CIVIL ACTION NO. 3:20-CV-369-CRS

RODGER WILLIAMS,
also known as Willow Williams                                               PLAINTIFF

v.

WARDEN FERGUSON, *et al.*                                               DEFENDANTS

## MEMORANDUM OPINION & ORDER

Plaintiff Rodger Williams, *pro se*, filed this 42 U.S.C. § 1983 action against Defendant Wellpath, LLC. While incarcerated at the Roederer Correctional Complex ("RCC"). Williams alleges Wellpath acted with deliberate indifference toward Williams's medical needs. This matter is now before the court on the parties' cross-Motions for Summary Judgment.[1] Williams Mot. Sum. Judg., DN 114; Wellpath Mot. Sum. Judg., DN 116. Fully briefed, the Motions are ripe for adjudication.

### I.      Background

Williams has been diagnosed with gender dysphoria. Williams Cert. Med. Rec., DN-118 at 5. For this reason, Williams was prescribed an estrogen replacement supplement, Premarin. *Id*. Williams has taken Premarin for more than 25 years. Williams Mot. Sum. Judg., DN 114 at 2.

During Williams's time at the RCC, Williams alleges Wellpath's agents did not dispense Williams's Premarin between June 28 and August 22, 2019. As a result, Williams allegedly lost breast tissue that had otherwise been accumulated over several years of Premarin use. *Id.* Williams has sued Wellpath because of this alleged injury. In Williams's words: "This complaint is very

---

[1] Williams's motion is styled as "Plaintiff's Final Dispositive Motion Prior to Setting Trial Date." Because it includes exhibits, the court construes it as a motion for summary judgment.

straightforward. The defendant's policy is to not promote breast development in their transgender inmates." Williams's Pretrial Memo., DN 59 at 7.

## II.     Legal Standard

A court may grant a motion for summary judgment where it finds that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party satisfies this burden, the non-moving party must produce specific facts demonstrating a genuine dispute of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

Assuming the moving party satisfies its burden of production, the nonmovant "must—by deposition, answers to interrogatories, affidavits, and admissions on file—show specific facts that reveal a genuine issue for trial." *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014) (citing *Celotex*, 477 U.S. at 324). The non-moving party's evidence is to be believed, *Anderson*, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the party opposing summary judgment. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The fact that a plaintiff is *pro se* does not lessen his obligations under Rule 56. "The liberal treatment of pro se pleadings does not require the lenient treatment of substantive law, and the liberal standards that apply at the pleading stage do not apply after a case has progressed to the summary judgment stage." *Johnson v. Stewart*, No. 08-1521, 2010 U.S. App. LEXIS 27051, at *6–7 (6th Cir. May 5, 2010) (citations omitted). Additionally, the Sixth Circuit Court of Appeals has made clear that, when opposing summary judgment, a party cannot rely on allegations or

denials in unsworn filings and that a party's "status as a pro se litigant does not alter" its burden of showing a genuine dispute for trial. *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010).

### III.   Discussion

Wellpath argues that it is entitled to a summary judgment because Williams failed to comply with the Prison Litigation Reform Act's ("PLRA") mandatory exhaustion requirement before filing this lawsuit. Wellpath Mot. for Sum. Judg., DN 116 at 14–16. The court agrees.

The PLRA requires prisoners to exhaust their available administrative remedies before filing suit in federal court. 42 U.S.C. § 1997(e). To properly exhaust administrative remedies, "a grievance must identify each defendant eventually sued" and allege misconduct by each defendant. *Bell v. Konteh*, 450 F.3d 651, 653–54 (6th Cir. 2006). The allegations in the grievance must give "sufficient notice of the matter being grieved." *Maxwell v. Corr. Med. Servs., Inc.*, 538 F. App'x 682, 688 (6th Cir. 2013) (citing *Reed-Bay v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010)). Additionally, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006).

In Kentucky state prisons, prisoners must complete the administrative review process set forth in Kentucky Corrections Policy and Procedure § 14.6. When a grievance is healthcare related, like Williams's, the prisoner must specifically comply with the "Health Care Grievance Process." To do so, a prisoner must first submit a grievance within five days of the alleged incident which (1) details when the incident occurred and (2) identifies all the individuals involved. Ky. Corr. Pol'y & Proc., DN 116-5 at § 14.6(II)(K); *see also Mattox v. Edelman*, 851 F.3d 583, 590–91 (6th Cir. 2017). Next, if the grievance's resolution is unfavorable, the prisoner must request review by the Health Care Grievance Committee. Ky. Corr. Pol'y & Proc., DN 116-5 at

§ 14.6(II)(K)(2). If the Health Care Grievance Committee affirms the unfavorable decision, to fully exhaust her administrative remedies, a prisoner must appeal the decision to the Medical Director. *Id.* at § 14.6(II)(K)(3). If the Medical Director affirms the unfavorable decision, the prisoner may then file a civil action in federal court.

Between June 28 and August 22, 2019, when Wellpath or its agents allegedly refused to dispense Premarin to Williams, Williams filed two grievances. GCDC Grievance Records, DN 116-3 at 4.[2] Just one is available in the evidentiary record: Grievance No. 19-133.[3] It relates to Wellpath's alleged refusal to dispense Premarin. Grievance No. 19-133, DN 114-12 at 2. In that grievance, dated July 16, 2019, Williams wrote the following:

> I have been constantly pleading for my correct medication. My PREMARIN has never been dispensed to me in the 17 days I've been in this prison. It came with me, has been ordered, destroyed, and reordered and I've never received one single day dosage of my medication. For the first time in 23 years my body has and is reverting back to that of an adolescent male. My breasts have decreased by 4 cup sizes and no end is in sight. They are becoming misshapen, lopsided and deformed. I am suffering some chest pains as well. I have spoken multiple times to multiple nurses and doctors all to no avail. Last spoke to medical on 7/15/19! I want my medication ordered and delivered in a <u>rush</u> <u>order</u> at the prison's expense!

*Id.* (emphasis in original).

At the informal resolution stage, an RCC official wrote the following:

> Ms. Williams [sic] case has been reviewed and approved by [the Therapeutic Level of Care Committee] on 7/30/19. Approved for endocrinology consult. Currently waiting for appointment. Premarin has been ordered by provider since 7/16. Medication available twice daily at pill call window. Once appt is scheduled, Ms. Williams will be transported to appt.

*Id.* (emphasis in original).

---

[2] This exhibit is a spreadsheet prepared by GCDC staff that records all grievances filed within the facility. Two were filed by Williams: Grievance No. 19-128 and Grievance No. 19-133. GCDC Grievance Records, DN 116-3 at 4.

[3] Both grievances were destroyed by GCDC in compliance with its retention policy, "which permits destruction after a period of one year." Floyd Aff., DN 125-1 at 2. However, Williams provided the court a copy of Grievance No. 19-133. DN 114-12 at 2. Williams did not provide a copy of the other destroyed grievance, Grievance No. 19-128.

The form notifies unsatisfied prisoners that they "have 5 working days to forward this form to the Grievance Counsel to request a hearing." *Id.*. Williams checked a box on the form to communicate dissatisfaction "with this informal resolution to [the] grievance." *Id.* Thus, at the time, Williams perceived the decision as unfavorable.

However, Williams has argued in an unsworn filing that the decision was a favorable one, such that compliance with steps two and three of Kentucky's Health Care Grievance Process outlined in § 14.6(II)(K)(2) and (3) was unnecessary. Williams Resp., DN 121 at 8–12. In so arguing, Williams effectively conceded non-compliance. Yet, in the same brief, Williams alleged the following: "Plaintiff, infuriated by" Grievance No. 19-133's informal resolution, "wrote a letter, reiterating her grievances in her informal grievance and had Notary Michelle Floyd notarized [sic] her document then and there." *Id.* at 2–3. What is more, Williams went as far as describing Grievance No. 19-133's informal resolution as "HOG WASH!" *Id.* at 7.

Based on these assertions, Williams was dissatisfied with Grievance No. 19-133's informal resolution. So dissatisfied, in fact, that Williams penned a letter "reiterating her grievances[.]" *Id.* at 2–3. However, neither the PLRA nor Kentucky's Health Care Grievance Process provide that the mere writing of a letter will suffice to appeal a grievance's informal resolution. Instead, Williams was required to request review by the Health Care Grievance Committee. If it rendered an unfavorable decision, Williams would have then been required to request review by the Medical Director. Only if the Medical Director rendered an unfavorable decision would Williams have been permitted to file suit in federal court.

Williams's failure to comply with steps two and three of Kentucky's Health Care Grievance Process is further supported by the uncontroverted evidence of record. RCC's certified grievance records, obtained by Wellpath during discovery, reveal that Williams voluntarily withdrew Grievance No. 19-133 on August 1, 2019. GCDC Grievance Records, DN 116-3 at 4. An RCC records custodian, Michelle Floyd, further testified to the same:

> The original documents pertaining to Grievance No. 19-128 and Grievance No. 19-133 have been destroyed pursuant to Kentucky Department of Corrections and RCC policy, which permits destruction after a period of one year.

> However, if the Plaintiff had appealed Grievance No. 19-128 or Grievance No. 19-133, the appeal and decision would still be noted in the record. Instead, the record demonstrates that the Plaintiff did not appeal Grievance No. 19-128 or Grievance No. 19-133.

Floyd Aff., DN 125-1 at 2–3. Thus, it is undisputed that the grievance did not proceed to steps two or three of Kentucky's Health Care Grievance Process.

Additionally, Williams's grievance does not identify Wellpath nor allege any wrongdoing by it. Both must appear in a grievance to sufficiently exhaust administrative remedies under the PLRA. *Bell*, 450 F.3d at 653–54. Without such a requirement, grievances would not give "sufficient notice of the matter being grieved." *Maxwell*, 538 F. App'x at 688. Indeed, step one of Kentucky's Health Care Grievance Process requires a grievant to identify all the parties involved in the alleged conduct. Ky. Corr. Pol'y & Proc., DN 116-5 at § 14.6(II)(K). Thus, Williams's grievance does not comply with steps one, two, or three of Kentucky's Health Care Grievance Process.

For these reasons, Williams did not comply with the PLRA's mandatory exhaustion requirement, so Wellpath is entitled to a summary judgment.

IV.    Conclusion

Accordingly, the court concludes that Wellpath's Motion for Summary Judgment [DN 116] must be and hereby is **GRANTED** and Williams's Motion for Summary Judgment [DN 114] must be and hereby is **DENIED**. Further, Wellpath's Motion to Seal [DN 117] Williams's medical records is **GRANTED**. All other pending Motions, [DN 133; DN 134; DN 135] are **DENIED** as moot. A separate judgment will be entered contemporaneously with this Memorandum Opinion and Order.

December 19, 2023

**Charles R. Simpson III, Senior Judge**
**United States District Court**

cc:    Plaintiff, *pro se*
        Counsel of Record